Marie Marcalle PIERRE, Petitioner,

v.

UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, by Its District Director At New York, New York, Respondent.

No. CV–92–2744.

United States District Court,
E.D. New York.

June 24, 1992.

Jack Sachs, New York City, for petitioner.

Scott Dunn, Asst. U.S. Atty., Brooklyn, N.Y., for respondent.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The petitioner, an alien currently subjected to exclusion proceedings, is under detention by the Immigration and Naturalization Service ("INS"). She has applied to this court for a writ of habeas corpus. For the reasons indicated below, her application is denied.

### FACTS

The petitioner, Marie Marcalle Pierre, is a citizen of Haiti. On November 29, 1988, the Attorney General of the United States granted her the status of "an alien lawfully admitted for temporary residence" pursuant to 8 U.S.C. § 1255a(a). She has not since applied for adjustment of her status to that of "an alien lawfully admitted for permanent residence" pursuant to 8 U.S.C. § 1255a(b). On March 31, 1991, the petitioner was notified by the INS that her status as a temporary resident alien would be terminated under 8 U.S.C. § 1255a(b)(2) if she did not apply for status as a permanent resident alien. Although she did not make such an application, it does not appear that the Attorney General has yet revoked her temporary resident alien status.

On April 28, 1992, the petitioner attempted to enter the United States. However, at that time, customs officials allegedly discovered approximately two kilograms of cocaine in her possession. The petitioner

was arrested and was subsequently indicted under 21 U.S.C. § 952. At a hearing on those criminal charges on May 7, 1992, a United States Magistrate Judge set conditions for her pretrial release. The petitioner and her brother, Rodeny Dorecean signed a $100,000.00 personal recognizance bond, and both surrendered their passports. Affidavit of Jack Sachs ¶ 5. The petitioner was then ordered released for pretrial purposes.

The Attorney General initially paroled the petitioner into the United States for the purpose of prosecution, but he revoked her parole on May 13, 1992. The INS has now initiated exclusion proceedings against the petitioner on the grounds that she had admitted to the commission of an offense "relating to a controlled substance" (8 U.S.C. § 1182(a)(2)(A)(i)(II)), that she is a "trafficker" of a "controlled substance" (8 U.S.C. § 1182(a)(2)(C)), and that she "is likely ... to become a public charge" (8 U.S.C. § 1182(a)(4)). Affidavit of Scott Dunn ¶ 5. On May 27, 1992, the petitioner applied to INS Assistant District Director Edward McElroy for parole into the United States. That application informed McElroy that the petitioner is a "temporary resident ... [and] a ... citizen of Haiti" who was "apprehended at [John F. Kennedy International Airport] and charged with importation of cocaine." Letter of Jack Sachs to McElroy dated 5/27/92. On June 16, 1992 (after this order to show cause was presented to this court), McElroy denied the petitioner's application for parole. He determined that because of the "seriousness and gravity of the charges against Ms. Pierre, as well as the fact that there is no relief from exclusion available to her, it has been decided to maintain custody of Ms. Pierre at this time." Letter of Edward J. McElroy to Sachs dated 6/16/92. The Assistant District Director indicated that the "release of Ms. Pierre is not in the public interest." *Id.*

The petitioner now seeks a writ of habeas corpus from this court. She argues that there should be "a burden upon the branch of the government now detaining petitioner (the INS) to show why petitioner should not be released, or rather paroled in to [sic] the United States for purposes of her prosecution, and why the Attorney General is not abusing his discretion in keeping petitioner detained, under these circumstances." Affidavit of Jack Sachs ¶ 8.

## DISCUSSION

Section 1182 of Title 8 of the United States Code provides that certain classes of aliens "shall be excluded from admission into the United States." To the end of determining whether particular applicants for admission into this country may be excludable, 8 U.S.C. § 1225(a) provides that "[a]ll aliens arriving at ports of the United States shall be examined by one or more immigration officers...." Furthermore, under 8 U.S.C. § 1225(b), "[e]very alien ... who may not appear to the examining officer at the port of arrival to be clearly and beyond a doubt entitled to land shall be detained for further inquiry...." However, the Attorney General may, under 8 U.S.C. § 1182(d)(5)(A), "in his discretion parole into the United States temporarily" any alien who seeks admission into the United States. Section 1182(d)(5)(A) provides that such parole must be "for emergent reasons or for reasons deemed strictly in the public interest...."

Under 8 C.F.R. § 212.5(a), the Attorney General delegates his authority to make such parole determinations to INS district directors. That section of the regulations further provides that, in making such determinations, the district direct "should consider the following:"

(1) The parole of aliens who have serious medical conditions in which continued detention would not be appropriate would generally be justified by "emergent reasons";

(2) The parole of aliens within the following groups would generally come within the category of aliens for whom the granting of the parole exception would be "strictly in the public interest", provided that the aliens present neither a security risk nor a risk of absconding:

[five categories omitted here]

.  .  .  .  .

(3) Aliens subject to prosecution in the United States who are needed for the purposes of such prosecution may be paroled to the custody of the appropriate responsible agency or prosecuting authority.

Thus, Section 212.5(a) of the regulations sets out three categories of aliens for the district director to consider in the exercise of his discretion as to the parole of an alien into the United States: first, aliens who have serious medical conditions; second, aliens who both fall within one of five specified categories (omitted above) and also present neither "a security risk" nor "a risk of absconding"; third, aliens subject to prosecution who are "needed for the purposes of such prosecution."

■ As a threshold matter, the contention of the petitioner that "there is a burden upon ... [the INS] to show why petitioner should not be ... paroled in to [sic] the United States for purposes of her prosecution" is entirely without merit. The petitioner argues that her position is supported by "an analogy" from *Correa v. Thornburgh*, 901 F.2d 1166 (2d Cir.1990), and from *Rodriguez–Fernandez v. Wilkinson*, 654 F.2d 1382 (10th Cir.1981). Those cases do not support her conclusion. First, the passage from *Correa* cited by the petitioner as relevant to this case simply states—as "background"—that the petitioner in that case had been "formally 'paroled' into the United States for purposes of prosecution pursuant to 8 U.S.C. § 1182(d)(5)(A)." *Correa*, 901 F.2d at 1169. This, however, constitutes nothing more than a recitation of fact by the court of appeals: It does not even purport to place a duty on the district directors of the INS to exercise their discretion in favor of parole as to every alien who is subject to prosecution. Next, *Rodriguez–Fernandez* simply indicates that "[w]hen an excludable alien in custody tests the detention by writ of habeas corpus ... the burden is on the government to show that the detention is still temporary pending expulsion, and not simply incarceration as an alternative to departure." *Rodriguez–Fernandez*, 654 F.2d at 1390. The petitioner here, however, does not challenge the *length* of her

detention, nor does she suggest that her detention is not "temporary pending expulsion."

There is, then, no "burden" on the government to demonstrate "why petitioner should not be released." Rather:

[T]he Attorney General's exercise of his broad discretionary power [to grant parole] must be viewed at the outset as presumptively legitimate and bona fide in the absence of strong proof to the contrary. The burden of proving that discretion was not exercised or was exercised irrationally or in bad faith is a heavy one and rests at all times on the unadmitted alien challenging denial of parole.

*Bertrand v. Sava*, 684 F.2d 204, 212–13 (2d Cir.1982). That is, the burden is on the petitioner—not on the government—to demonstrate either that the district director did not exercise his discretion at all or that the district director exercised his discretion "irrationally" or "in bad faith." Furthermore, this burden of demonstration (which is on the petitioner "at all times") must overcome an initial presumption of the validity of the parole determination. Under *Bertrand*, then, the first contention of the petitioner—that it is the government that must demonstrate why she should be detained—is completely without merit.

■ The petitioner's second argument—that the district director abused his discretion in denying her parole—is also baseless. It is true that a petitioner may seek review of such an exercise of discretion by a district director. *Bertrand*, 684 F.2d at 212. However, a decision to deny parole "may not be challenged on the grounds that the discretion was not exercised fairly in the view of a reviewing court or that it gave too much weight to certain factors ... and too little to others." *Id.* Rather, "section 1182(d)(5) permits the Attorney General to deny parole to ... aliens on the ground that he finds no emergent or public interest reasons justifying their parole." *Id.* Thus, if there is a "facially legitimate and bona fide reason" for the denial of parole— and if the discretion was not exercised "to discriminate invidiously. against a particu-

lar race or group or to depart without rational explanation from established policies"—the determination of the district director may not be disturbed by a reviewing court. *Id.*

Here, the petitioner argues that insofar as she prevailed at "a detention hearing in District Court, [she] was found *not* to be either a danger to the community or a flight risk, since bond was in fact set, and posted." Affidavit of Jack Sachs ¶ 7. She argues that her present detention by the INS "virtually contradict[s] the conditions established by a U.S. Magistrate Judge[.]" *Id.* Thus, it appears to be her argument that, because a magistrate judge has determined pursuant to 18 U.S.C. § 3142 that conditions other than pretrial detention would "reasonably assure" her presence at trial and would not "endanger the safety of any other person or the community", any determination by the district director that she should be denied parole would be in tension with that judicial determination and would, therefore, constitute an abuse of his discretion.

The argument of the petitioner, however, completely ignores the different standards of 18 U.S.C. § 3142 and of 8 C.F.R. § 212.5. Under Section 3142, a criminal defendant may be released on bond if a judicial officer determines that she presents neither a risk of flight nor a danger to the community. As noted above, Section 212.5 sets forth three categories of aliens for the consideration of the district director in his parole determinations. The petitioner does not argue that she comes within the scope of the first category (aliens "who have serious medical conditions") or within the scope of the second category (aliens whose release would be "strictly within the public interest" by virtue of certain specified factors). Rather, she argues that she falls within the third category—that of "[a]liens subject to prosecution in the United States."

But the standards for granting parole to aliens in this third category do not indicate that a district director must consider whether the petitioner is a risk of flight or a danger to the community. Instead, Section 212.5(a)(3) provides that these aliens may be paroled into the United States when they are "needed for the purposes of such prosecution." Thus, a denial of parole under Section 212.5(a)(3) is tantamount to a determination that an alien "subject to prosecution in the United States" is not, at the time of the denial, "needed for purposes of such prosecution" and that, accordingly, the grant of parole would not be "strictly in the public interest." There is nothing inconsistent between a determination of that nature and a determination by a judicial officer that a particular alien does not pose either a risk of flight or a danger to the community. It cannot be the case, then, that a denial of parole under Section 212.5(a)(3) is *necessarily* an abuse of the parole discretion simply because a magistrate judge has set a bond in a criminal case. Thus, because Section 212.5(a)(3) does not implicate the factors considered by the judicial officer under Section 3142, the petitioner may not attack the exercise of discretion by the district director on the bare fact of her pretrial release.

Rather, she must otherwise demonstrate to this court that the denial of parole in her case is "irrational" and not based on a "facially legitimate and bona fide reason." Here, however, the district director indicated to the petitioner (after this petition was filed with the court) that her application for parole was denied because of the "seriousness" of the criminal charges against her and because she has "no relief from exclusion available to her." Letter from Edward J. McElroy to Sachs dated 6/16/92. The second of these stated bases for the denial of parole to the petitioner has been elsewhere approved by the Second Circuit as a factor on which the district director may rely in the exercise of his parole discretion. *Bertrand*, 684 F.2d at 214–17 ("likelihood of success of … alien's political asylum application" is "neither irrational nor unreasonable" as factor in parole determination). Because the petitioner has not shown that the first factor (the seriousness of the charges against her) constitutes such an irrational basis for a parole determination as to negate the legitimacy of the second factor, the petitioner has presented no basis on which this court

444

could conclude that the district director has abused his discretion.

Finally, the petitioner has not even endeavored to argue that the district director has somehow abused his discretion in determining that she is not at present "needed for purposes" of her criminal prosecution. That is, the petitioner has not argued that the district director violated the standard set out on the face of Section 212.-5(a)(3)—the provision under which she seeks parole. Nor has she raised a constitutional argument that her detention has interfered with her rights to confer with counsel or to assist in the preparation of her defense. Indeed, on the one occasion thus far when she was "needed for purposes" of her criminal prosecution—her arraignment before the magistrate judge— the petitioner was in fact paroled into the United States under Section 212.5(a)(3). She has not demonstrated to the court that the district director, either on that occasion or on any other, has failed to observe the parameters of Section 212.5(a)(3).

CONCLUSION

For the reasons indicated above, the application for a writ of habeas corpus is denied.

SO ORDERED.